UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FAYE FRANCES KAUSCH,

    Plaintiff,

v.                                                                  Case No. 3:19-cv-1026-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff filed her applications for DIB and SSI on March 11, 2015, alleging a disability onset date of March 2, 2009, which was later amended to January 1, 2013.[2] (Tr. 15, 112.) These claims were denied initially and on reconsideration. An initial hearing was held before the assigned Administrative Law Judge ("ALJ") on May 22, 2017, at which Plaintiff was represented by counsel. (Tr. 91-105.) A supplemental

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 18.)

[2] Plaintiff had to establish disability on or before June 30, 2013, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 16, 106.) Plaintiff amended her disability onset date from March 2, 2009 to January 1, 2013 at the hearing held on May 22, 2017. (Tr. 15, 95, 465.) The relevant period for her SSI application is the month in which the application was filed (March 2015) through the date of the ALJ's decision (July 11, 2018). (Tr. 35.)

hearing was held before the assigned ALJ on June 11, 2018, at which Plaintiff was also represented by counsel. (Tr. 42-90.) The ALJ issued an unfavorable decision on July 11, 2018, finding Plaintiff not disabled from January 1, 2013, the alleged disability onset date, through the date of the decision. (Tr. 15-35.)

Plaintiff is appealing the Commissioner's final decision that she was not disabled during the relevant time period. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. (Tr. 1-3.) The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED**.

## I. Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

    **II.**    **Discussion**

        **A.**    **Issues on Appeal**

Plaintiff raises two issues on appeal.  (Doc. 22.)  First, Plaintiff argues that the ALJ failed to include any environmental limitations regarding her ability to tolerate exposure to pulmonary irritants in his residual functional capacity ("RFC") assessment, "contrary to the opinions of every physician (examining, treating[,] and state agency non[-]examining physician) who opined as to the impact of [her] chronic asthma on functioning." (*Id.* at 12-18.)  Second, Plaintiff argues that the ALJ's "decision to assign the greatest weight to a 2015 opinion from Dr. Kirkendall, despite the more current 2017 opinion from Dr. Kirkendall and also the detailed testing performed by Dr. Nay in 2017, was improper and not based on substantial evidence." (*Id.* at 18-25.)  Defendant responds that substantial evidence supports the ALJ's determination that Plaintiff's asthma did not cause significant functional limitations and that the ALJ's "consideration of the medical opinions regarding Plaintiff's mental functioning was in accordance with the regulations and case law and supported by substantial evidence in the record."

3

(Doc. 23 at 5-15.)  The Court agrees with Plaintiff on the first issue and, therefore, does not address the remaining issues in detail.

### B.    Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining [S]tate agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'"  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p[3] (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).  While the ALJ is not bound by the findings of non-examining

---

[3] SSR 96-6p has been rescinded and replaced by SSR 17-2p effective March 27, 2017.  However, because Plaintiff's applications predated March 27, 2017, SSR 96-6p was still in effect on the date of the ALJ's decision.

physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision.  SSR 96-6p.

### C. Relevant Evidence of Record

An Adult Outpatient Psychiatric Evaluation from Putnam-St. Johns Behavioral Health dated January 6, 2012 indicated that Plaintiff had a history of respiratory disorder and asthma for which she used Primatene.[4]  (Tr. 583.)  A Discharge Summary from Westlake Regional Hospital, dated April 30, 2014, listed Plaintiff's past medical history to include asthma and type 2 diabetes mellitus.  (Tr. 531.)  It also listed Plaintiff's discharge diagnoses as left great toe cellulitis, type 2 diabetes mellitus, and history of asthma.  (*Id.*)  Medical records from Flagler Hospital dated September 15, 2015 indicate that Plaintiff had a history of unspecified asthma.  (Tr. 625.)

On April 22, 2015, Darrin Kirkendall, Ph.D., a State agency consultative examiner completed a Psychological Evaluation and listed asthma, diabetes, and knee pain as Plaintiff's chronic medical conditions.  (Tr. 562.)  Dr. Kirkendall completed a second Psychiatric Evaluation of Plaintiff dated July 6, 2017, which again listed asthma as one of Plaintiff's chronic and current medical conditions.  (Tr. 665.)

In his April 23, 2015 Disability Evaluation, Badri N. Mehrotra, M.D., a State

---

[4] Primatene is an over-the-counter treatment for asthma available as an inhaler or in tablet form.  *See* https://www.webmd.com/asthma/news/20190201/primatene-mist-coming-back-some-docs-concerned (last visited Dec. 1, 2020).

5

agency consultative examiner, performed a physical examination of Plaintiff and listed his diagnostic impressions as chronic back pain, diabetes that had not been managed due to lack of funds, chronic ear ache, history of asthma, arthritis of the left knee, history of sciatica, and probable disc disease of the lumbar spine. (Tr. 569-71.) Dr. Mehrotra also noted that Plaintiff "has some lung problems, namely cough, difficulty breathing[,] and shortness of breath." (Tr. 569.) Upon physical examination, Dr. Mehrotra noted that Plaintiff's respiratory system showed no chest deformity, her lungs were clear to percussion and auscultation, and no crepitations or rhonchi were detected. (Tr. 570.)

On August 17, 2015, James Patty, M.D., a State agency physician at reconsideration, determined that Plaintiff had environmental limitations due to history of asthma and opined that she should avoid all exposure to "fumes, odors, dusts, gases, poor ventilation, etc." (Tr. 146-47.)

In his Orthopedic Examination dated July 11, 2017, William Guy, M.D., a State agency consultative examiner, noted, as follows, with respect to Plaintiff's asthma:

> CHIEF COMPLAINT: The claimant was diagnosed with asthma in 1971 at the age of 5. She states that she was hospitalized a number of times as a child, but states that she has had no hospitalizations since her teenage years. The claimant states that her asthma symptoms tend to be worse in the spring and the fall during pollen seasons. Allergies[,] such as animal dander[,] also will tend to trigger her asthma. The claimant reports that as a result of lack of health insurance she has been unable to get any of her medications including her asthma medications since 2015.

(Tr. 675.) Dr. Guy also noted that Plaintiff started smoking cigarettes at the age

6

of 13 and continued to smoke approximately half a pack of cigarettes daily.  (Tr. 676.)  Dr. Guy diagnosed Plaintiff with, *inter alia*, mild to moderate chronic asthma and opined that "she should avoid smoke, dust, and other known respiratory irritants."  (Tr. 678.)  In his Medical Source Statement ("MSS") of Ability to Do Work-Related Activities (Physical), also dated July 11, 2017, Dr. Guy opined, in part, that Plaintiff should never be exposed to dust, odors, fumes, and pulmonary irritants.  (Tr. 687.)

On May 31, 2018, after examining Plaintiff and reviewing her medical records at the request of her counsel, William V. Choisser, M.D. completed a Disability Evaluation noting, in part, that Plaintiff was a cigarette smoker, had asthma for several years, and suffered from shortness of breath and frequent coughing.  (Tr. 695.)  He also noted that Plaintiff's lungs were clear to auscultation with no audible wheezes or rhonchi, but she had frequent coughing and her cough was dry and nonproductive.  (*Id.*)  In his Physical RFC Questionnaire, also dated May 31, 2018, Dr. Choisser opined that Plaintiff should have no exposure to dust, fumes, gases, or smoke, but could tolerate exposure to perfumes and pollen for up to one-third of the day.  (Tr. 701.)

### D. The ALJ's Decision

At step two of the sequential evaluation process,[5] the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the

---

[5] The Commissioner employs a five-step process in determining disability.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

7

lumbar spine; diabetes mellitus with neuropathy; a history of tibial plateau fracture with osteoarthritis of the left knee; a history of headaches; depression; anxiety; and post-traumatic stress disorder ("PTSD"). (Tr. 18.) The ALJ also found that Plaintiff's asthma and hearing loss were non-severe impairments as they "were either resolved or resulted in no more than mild symptoms" and "[t]he record did not show significant functional limitations related to these impairments." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18-20.)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work, but with the following limitations:

> [S]he has the ability to lift and/or carry twenty pounds occasionally, and ten pounds frequently. She can push and/or pull as much as she can lift and/or carry. In an eight-hour [work]day, she can sit for four hours at a time, and a total of eight hours, with customary breaks. The claimant can stand and/or walk for two hours at a time, and a total of six hours, during an eight-hour [work]day, with customary breaks. The claimant has no limitations regarding postural activities, manipulation, vision, or communication, but does have environmental limitations precluding concentrated exposure to loud background noise greater than a three on a scale of one-to-five. Mentally, the claimant is unable to perform complex tasks, but can perform simple, routine tasks consistent with unskilled work, with concentration on those tasks for two-hour periods, with normal breaks and a lunch.

(Tr. 20-21.) In making these findings, the ALJ discussed Plaintiff's complaints, the medical evidence, and the opinions of record. (Tr. 21-33.)

Specifically, the ALJ addressed the opinion of Dr. Mehrotra as follows:

8

> He provided a diagnostic impression of chronic back pain, diabetes not managed due to lack of funds, chronic ear ache, history of asthma, arthritis of the left knee, history of sciatica, and probable disc disease of the lumbar spine. Dr. Mehrotra determined that no walking device was needed. . . . Although Dr. Mehrotra did not provide any opinion regarding specific functional limitations that would potentially result from the claimant's physical impairments, his findings are given significant weight. They are consistent with his examination and other physical examinations contained in the record that showed generally benign findings. Any physical restrictions resulting from the claimant's physical impairments were incorporated into the previously stated residual functional capacity assessment.

(Tr. 24.) The ALJ also addressed Dr. Patty's opinion, noting, *inter alia*, that "[h]e found the claimant should avoid all exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation." (Tr. 25.) The ALJ gave significant weight to Dr. Patty's opinions "as they [were] consistent with the claimant's conservative treatment history and lack of significant objective medical findings" and because the "physical examinations contained in the medical evidence of record show[ed] an ability to perform a reduced range of light work." (*Id.*)

With respect to Dr. Guy's consultative examination and opinions, the ALJ acknowledged that he diagnosed Plaintiff with, *inter alia*, mild-to-moderate chronic asthma and opined that she "should avoid smoke, dust, and other known respiratory irritants." (*Id.*) The ALJ also noted that Dr. Guy opined that Plaintiff "could never tolerate exposure to unprotected heights, extreme cold or heat, or pulmonary irritants such as fumes, odors, dusts, gases or poor ventilation." (Tr. 25-26.) However, the ALJ gave Dr. Guy's opinions "no partial weight," reasoning

9

as follows:

> The medical evidence of record does support his opinion regarding the lack of a need for a cane and the claimant's ability to lift and carry. However, the objective medical findings, including those from his own examination of claimant, do not corroborate restrictions to the claimant's ability to use her hands or feet, engage in postural limitations, or tolerate exposure to environmental conditions. . . . No weight is given to the finding of limitations regarding respiratory irritants, in light of the fact that the claimant continues to smoke against medical advice and has not required regular treatment for any breathing issues. . . .

(Tr. 26.)

The ALJ also addressed, *inter alia*, the opinions of Dr. Choisser, noting that upon examination, he found Plaintiff's "lungs were clear to auscultation, with no audible wheezes or rhonchi" and provided an impression of various conditions, including a history of asthma. (*Id.*) Without specifically addressing Dr. Choisser's opinions regarding Plaintiff's environmental limitations, the ALJ noted, in part, that "Dr. Choisser found the claimant was incapable of even 'low stress' jobs, and would be expected to miss more than four workdays per month due to her impairments and related symptoms," and "opined that the claimant's current symptoms and limitations had existed since March 2009." (*Id.*) The ALJ gave "no weight to the recommended limitations of Dr. Choisser" because his opinions "were given after a one-time examination, and [were] inconsistent with the limited objective medical evidence, conservative treatment history, and his own examination of the claimant showing generally benign findings." (Tr. 26-27.)

Of relevance, in assessing Plaintiff's mental health impairments, the ALJ

10

noted that Plaintiff "received only sporadic and conservative treatment, which consisted of prescription medication," had not "required psychiatric hospitalization or inpatient treatment," and that it appeared Plaintiff had "not received mental health treatment since February 2013." (Tr. 32.) The ALJ also noted that at the hearing, Plaintiff acknowledged that "prescription medications helped control her mental health symptoms" but "testified to not taking any medications since 2015 secondary to [] lack of insurance and [] money." (Tr. 32.) However, the ALJ further noted, "she continues to smoke cigarettes against medical advice, which indicates the availability of funds that are used for things other than treatment."[6] (*Id.*) In sum, the ALJ concluded that the medical records failed to establish "worsening of claimant's conditions or any long[-]standing restrictions in her ability to function," beyond those noted in the RFC. (Tr. 33.)

After determining that Plaintiff was unable to perform any past relevant work, at the fifth and final step of the sequential evaluation process, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as a marker, a clerical checker I, and a router. (Tr. 33-35.) All of these representative occupations are light, unskilled jobs with a Specific Vocational Preparation ("SVP") rating of 2. (Tr. 34.) Thus, the ALJ found that Plaintiff had not been under a disability from January 1, 2013

---

[6] In response to the ALJ's question as to whether Plaintiff was still smoking, she responded "Rare [sic]. Every now and then when I can get somebody to get me cigarettes." (Tr. 75.)

through the date of the decision.  (Tr. 35.)

**III.	Analysis**

The Court agrees with Plaintiff that the ALJ's failure to adequately explain why he did not credit the medical opinions regarding Plaintiff's environmental limitations with respect to her ability to tolerate pulmonary irritants in assessing the RFC constitutes a reversible error.  Although the ALJ restricted Plaintiff to performing light work with limitations, the RFC did not account for Dr. Patty, Dr. Guy, and Dr. Choisser's opinions that Plaintiff should avoid almost all exposure[7] to pulmonary irritants due to her asthma.  Plaintiff argues that "[t]he ALJ is not a physician and his findings contradicted the opinions of three separate independent physicians—the only physicians to opine as to the impact of the condition and limitations."  (Doc. 22 at 17.)  According to Plaintiff, "the ALJ's decision to discount their opinions was not supported by substantial evidence" and the ALJ erred "in failing to properly reconcile conflicts in the evidence and failed to give adequate reasons for rejecting the opinions of Dr. Patty, Dr. Guy, and Dr. Choisser."  (*Id.*)

First, with respect to the opinion of Dr. Patty, the ALJ did not provide an adequate explanation for giving this opinion "significant weight" overall, while seemingly discounting Dr. Patty's opinion that Plaintiff should avoid all exposure

---

[7] Dr. Patty and Dr. Guy opined that Plaintiff should avoid all exposure to pulmonary irritants.  (Tr. 146-47, 678, 687.)  Dr. Choisser opined that Plaintiff should avoid all exposure to dust, fumes, gases, or smoke, but that she could tolerate exposure to perfumes and pollen for up to one-third of the day.  (Tr. 701.)

12

to fumes, odors, dusts, gases, and poor ventilation.  While an ALJ's RFC determination does not need to include or account for every limitation found in a medical opinion, "[t]he ALJ is required to provide a reasoned explanation as to why he chose not to include a particular limitation in his RFC determination." *Knoblock v. Colvin*, No. 8:14-cv-646-MCR, 2015 WL 4751386, at *3 (M.D. Fla. Aug. 11, 2015) (internal citations and quotation marks omitted).  As such, "reversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision to reject portions of a medical opinion while accepting others."  *Knoblock*, 2015 WL 4751386, at *3 (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)).

Second, the undersigned finds that the ALJ's reasons for discounting Dr. Guy's opinion regarding Plaintiff's environmental limitations as to pulmonary irritants, namely that "the claimant continues to smoke against medical advice and has not required regular treatment for any breathing issues," are not supported by substantial evidence.[8]  (Tr. 26.)  The ALJ's claim that Plaintiff's continued smoking against medical advice warranted discounting Dr. Guy's opinion regarding respiratory irritants is not an adequate reason for discounting his opinion.  *See, e.g.*, *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1251 (N.D. Ala. Mar. 8, 2004) ("Breaking an addiction is not a simple matter of rationally deciding to cease the addictive behavior, whether it be smoking, drinking[,] or drug abuse.

---

[8] Of note, Dr. Guy examined Plaintiff at the request of the ALJ after the first hearing.

The world would obviously be a better place if that were so. In the case of nicotine addiction, a mere failure to successfully stop smoking will not support a finding of willful refusal to try. If the plaintiff was unable to stop smoking because she was addicted to nicotine, her noncompliance would not be unjustified. The burden is on the Commissioner to produce evidence of unjustified noncompliance."); *Morin v. Comm'r of Soc. Sec.*, 259 F. Supp. 3d 678, 685 (E.D. Mich. Apr. 13, 2017) (finding that plaintiff's continued smoking against medical advice did not logically support the ALJ's conclusion that her symptoms were not as severe as she alleged "given the indisputable fact that nicotine is a powerfully addictive drug") (footnote omitted); *Masoud v. Saul*, 448 F. Supp. 3d 147, 158 (D. Conn. Sept. 28, 2020) ("That Masoud continues to smoke, realistically, is little more than evidence of the stranglehold of his addiction to nicotine rather than a statement about the severity of his emphysema. Cigarette smoking, is, at best, a vaporous basis for discrediting the treating physicians' diagnoses of emphysema.").

Additionally, while the ALJ also reasoned that Plaintiff "has not required regular treatment for any breathing issues," the ALJ failed to acknowledge her lack of medical insurance or funds, which prevented her from obtaining medical care. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988) (agreeing with other circuits that poverty excuses noncompliance with medical treatment). The ALJ also failed to explain how Plaintiff's lack of regular treatment for asthma supported his rejection of Dr. Guy's opinion that Plaintiff should avoid respiratory

14

irritants. In rejecting Dr. Choisser's opinions altogether, the ALJ reasoned that "his opinions [] were given after a one-time examination, and are inconsistent with the limited objective evidence, conservative treatment history, and his own examination of the claimant showing generally benign physical findings." (Tr. 26-27.) However, the ALJ again failed to consider Plaintiff's lack of medical insurance and funds in rejecting the opinion of Dr. Choisser, including his opinion regarding Plaintiff's limitations with respect to pulmonary irritants.

As Plaintiff notes, Social Security Ruling ("SSR") 85-15 states that "[w]hen an individual can tolerate very little noise, dust, *etc.*, the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." SSR 85–15, 1985 WL 56857, at *8 (S.S.A. 1985). Thus, the ALJ's failure to adequately address Dr. Patty, Dr. Guy, and Dr. Choisser's opinions regarding Plaintiff's inability to tolerate respiratory irritants is not, as Defendant contends, harmless. *See Ortmyer v. Colvin*, No. 8:15-cv-303-T-27AEP, 2016 WL 908993, at *4 (M.D. Fla. Feb. 16, 2016) (report and recommendation adopted by 2016 WL 1031302 (M.D. Fla. Mar. 9, 2016)) (finding that the ALJ's failure to address a treating doctor's opinion regarding the possible exacerbation of plaintiff's symptoms when exposed to even minimal pulmonary irritants required a remand).

Based on the foregoing, the Court finds that the ALJ failed to properly assess the impact of Plaintiff's asthma on her RFC and the ALJ's decision is not supported by substantial evidence. As such, the case will be reversed and

remanded with instructions to the ALJ to reconsider the opinions of Dr. Patty, Dr. Guy, and Dr. Choisser, explain what weight they are being accorded, and the reasons therefor.  If the ALJ rejects any portion of these opinions, he must explain his reasons for doing so.  Because this issue is dispositive, there is no need to address Plaintiff's remaining arguments.  See Knoblock, 2015 WL 4751386, at *3 (citing, inter alia, Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)).

    Accordingly, it is **ORDERED**:

    1.    The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g) with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including the opinion evidence from treating, examining, and non-examining sources, and conduct any further proceedings deemed appropriate.

    2.    The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

    3.    In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2),* Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE and ORDERED** in Jacksonville, Florida on December 1, 2020.

*[signature]*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record